UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

MICHAEL MATWYUK and
DAVID DeVARTI,

       Plaintiffs,

v.                                                                                      Case No.  2:13-CV-284

RUTH JOHNSON, in her official capacity as                 HON. GORDON J. QUIST
Michigan's Secretary of State, and MICHAEL
FILDEY, in his individual capacity,

       Defendants.

_____/

**<u>OPINION</u>**

TABLE OF CONTENTS

I. BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.    Matwyuk's Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        1.    The Court has Jurisdiction Over Matwyuk's Request for Declaratory Relief. . . . . 4

            a.    Standing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
            b.    Mootness. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
            c.    Exercise of Declaratory Judgment Jurisdiction. . . . . . . . . . . . . . . . . . . . 9

        2.    Defendant Fildey is not Entitled to Qualified Immunity. . . . . . . . . . . . . . . . . . 9

            a.    Constitutional Violation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

                i.    Government versus Private Speech. . . . . . . . . . . . . . . . . . . . . . 12
                ii.    Facial Challenge. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
                iii.    As Applied Challenge. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

            b.    Clearly Established. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    B.    DeVarti's Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

III. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

MICHAEL MATWYUK and
DAVID DeVARTI,

          Plaintiffs,

v.                                                                                        Case No.  2:13-CV-284

RUTH JOHNSON, in her official capacity as                             HON. GORDON J. QUIST
Michigan's Secretary of State, and MICHAEL
FILDEY, in his individual capacity,

          Defendants.

_____/

## OPINION

Plaintiffs, Michael Matwyuk and David DeVarti, have sued Defendants, Ruth Johnson, in her official capacity as the Secretary of State of the State of Michigan, and Michael Fildey, in his individual capacity, alleging that the limitation imposed by Michigan's personalized vehicle license plate program on configurations "that might carry a connotation offensive to good taste and decency," M.C.L. § 257.803b, is unconstitutionally vague and overbroad. Plaintiffs allege both facial and as applied challenges to the statutory limitation under the First Amendment and the Due Process Clause. Plaintiff Matwyuk seeks damages and declaratory relief, and Plaintiff DeVarti seeks declaratory and injunctive relief.

Defendants have moved to dismiss Plaintiffs' amended complaint on various grounds, including that Plaintiff Matwyuk is not entitled to declaratory relief and Defendant Fildey is entitled to qualified immunity as to Matwyuk's damage claims. Plaintiffs have responded to the motion, and Defendants have replied.

After careful review and consideration of the parties' arguments, the Court will deny Defendants' motion in its entirety.

# I. BACKGROUND

The State of Michigan, like many states, has a personalized vehicle license plate program that allows vehicle owners to customize the letter and number configurations of their personal vehicle license plates. *See* M.C.L. § 257.803b.  (Dkt. # 14 at Page ID 145, ¶ 2.)  Commonly referred to as "vanity plates," personalized licensed plates issued pursuant to this program allow vehicle owners to convey a brief message or slogan reflecting their personal identities, values, or sense of humor through a unique combination of letters and numbers.  (*Id.* at Page ID 148, ¶¶ 18–19.)  Vanity plates are subject to certain content-neutral limitations, including the number of characters permitted on a plate and the prohibition that no two plates may bear the same letter and number configuration.  (*Id.* ¶ 21.)  The vanity plate program also contains a content-based restriction that prohibits combinations "that might carry a connotation offensive to good taste and decency."  M.C.L. § 257.803b.  The statute does not define the phrase "offensive to good taste and decency," but the Michigan Department of State has adopted the following internal guidelines to assist in its application:

> a.   Phrases or letter combinations commonly perceived as indecent (i.e., profanity, obscene language).  As used here, "profanity" means irreverence towards sacred things, particularly an irreverent or blasphemous use of the name of God.  "Obscene language" means something that is morally abhorrent; its predominant appeal is to a prurient interest, socially taboo, or otherwise grossly repugnant to generally accepted notions of what is appropriate, such as references to excretion.
>
> b.   Configurations of a sexual nature, including those that denote sexual organs, functions, or acts.
>
> c.   Words or phrases that portray a negative image of a given racial, religious, ethnic or socioeconomic group, including persons of a particular gender or sexual orientation.
>
> d.   Configurations that are unacceptable with respect to society's collective values, such as "COPKILR."
>
> e.   Words or phrases dealing with illegal drugs or their usage.

(*Id.* at Page ID 148–49, ¶ 23.)

2

Plaintiff Matwyuk was a member of the U.S. Army for 22 years, and was deployed in Iraq in 2004 and 2005, during the height of hostilities in that country.  Insurgent extremists in both Iraq and Afghanistan who constantly attacked American soldiers, such as Matwyuk, referred to them as "infidels," or non-believers.  (*Id.* at Page ID 145, 150, ¶¶ 3, 28–30.)  American soldiers quickly adopted the "infidel" label out of pride and patriotism as their own identifier and openly displayed their affinity for it by tattooing the word "infidel" onto their chests, arms, and legs; sewing patches containing the word "infidel" onto their uniforms; and wearing hats and shirts bearing the word "infidel."  (*Id.* at Page ID 150–51, ¶¶ 31, 33.)

In 2012, Matwyuk decided to order a vanity plate for his vehicle to express his identity as a so-called "infidel."  Matwyuk visited the Michigan Department of State's website, selected an Iraq War Veteran service plate and typed "INFIDL" into the spaces provided on the website to account for the six-space character limitation for Iraq War Veteran license plates.  The return page indicated that the selection was not available, so Matwyuk typed the word "INF1DL," replacing the letter "I" with a "1."  Matwyuk ordered the plate after the return page said that it was available.  (*Id.* at Page ID 150, ¶¶ 34–43.)  On November 26, 2012, the Department of State informed  Matwyuk that his requested plate would not be issued because the configuration might carry a connotation offensive to good taste and decency.  (*Id.* ¶ 44.)  On December 5, 2012, Matwyuk sent a letter to the Department of State asking it to reconsider his request and noting that many vanity plates espouse religious sentiments, and an infidel is a non-believer.  (*Id.* at Page ID 152, ¶ 45.)  Defendant Fildey responded in a letter dated December 20, 2012, stating that although the Department of State has issued plates encompassing "a wide range of religious sentiments . . . . [i]n the case of infidel we believe it does carry an offensive connotation now because of the way it's being used by radical elements."  (*Id.* ¶¶ 47–48.)  On December 28, 2012, Matwyuk sent the Department of State a second letter renewing his request for reconsideration and stating that, as a veteran of the Iraq war, he is in fact an infidel.  (*Id.* ¶ 48.)  On January 17, 2013, Defendant Fildey wrote to Matwyuk confirming that the requested plate would not be issued.  (*Id.* ¶ 45.)

3

Matwyuk filed his complaint in the instant case on September 11, 2013.  On September 13, 2013, the Department of State changed its position and notified Matwyuk that his requested plate would be issued. Thereafter, Defendants filed a motion to dismiss.  In response, Matwyuk filed an amended complaint, which added David DeVarti as a plaintiff.  On October 11, 2013, DeVarti, an anti-war activist, applied for a vanity plate reading "WAR SUX."  (*Id.* at Page ID 153, ¶¶ 53–54.)  The Department of State denied DeVarti's request on October 14, 2013, because the requested plate "might carry a connotation offensive to good taste and decency in violation of the Motor Vehicle Code."  (*Id.* ¶ 55.)

## II. DISCUSSION

Defendants contend that Matwyuk's claims for declaratory relief are subject to dismissal under Federal Rule of Civil Procedure 12(b)(1) because Matwyuk lacks standing, his claims  are moot, and the applicable factors set forth in *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984), weigh against the Court exercising its discretion to provide declaratory relief. Defendants also contend that Defendant Fildey is entitled to qualified immunity with regard to Matwyuk's damage claims.  As to DeVarti, Defendants argue that his claims must be dismissed because the statutory language at issue is neither facially overbroad nor vague and is not unconstitutional as applied to DeVarti, and DeVarti's allegations fail to support the severe remedy of injunctive relief.[1]

### A.   Matwyuk's Claims

#### 1.   The Court has Jurisdiction Over Matwyuk's Request for Declaratory Relief

##### a.   Standing[2]

---

[1] Defendants also contend that Defendant Fildey is entitled to qualified immunity on DeVarti's claim for money damages.  As Plaintiffs note, however, DeVarti is not asserting a claim for damages in this case.  (Dkt. # 21 at Page ID 284 n. 11; dkt. # 1 at Page ID 154–56, ¶¶ 61, 64, 66, 68.)

[2] Defendants' motion pertaining to Matwyuk's claims for declaratory relief is brought pursuant to Federal Rule of Civil Procedure 12(b)(1).  A motion under Rule 12(b)(1) challenges the court's subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  The party opposing a Rule 12(b)(1) motion bears the burden of proving jurisdiction.  *Wei Zheng v. Holder*, 485 F. App'x 550, 554 (6th Cir. 2012) (quoting *GTE N., Inc. v. Strand*, 209 F.3d 909, 915 (6th Cir. 2000)). Rule 12(b)(1) motions may be brought either as a facial attack or a factual attack.  *O'Bryan v. Holy See*, 556 F.3d 361, 375

Defendants argue that the Court should dismiss Matwyuk's claims for declaratory relief because he lacks Article III standing.   "Standing is the 'threshold question in every federal case.'" *Grendell v. Ohio Supreme Ct.*, 252 F.3d 828, 832 (6th Cir. 2001) (quoting *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999)).   To satisfy the standing requirement, "a plaintiff in federal court must allege such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court  jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Greater Cincinnati Coal. for the Homeless v. City of Cincinnati*, 56 F.3d 710, 715 (6th Cir. 1995) (internal quotation marks and citations omitted). Standing encompasses both Article III requirements, as well as prudential limitations on the exercise of jurisdiction. *Kowalski v. Tesmer*, 543 U.S. 125, 128–29, 125 S. Ct. 564, 567 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 2205 (1975)).   To establish Article III standing, a plaintiff must show injury-in-fact, a causal relationship between the injury and the defendant's challenged acts, and the likelihood that a favorable decision will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 (1992).   An injury-in-fact must be "concrete and particularized and actual or imminent." *Id.* at 560, 112 S. Ct. at 2136.   A plaintiff who seeks declaratory relief can meet the standing requirements by showing "actual present harm or a significant possibility of future harm . . . ." *Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998).

Defendants argue that  Matwyuk lacks standing because he cannot demonstrate the possibility of future harm. They note that Matwyuk received his vanity plate several days before Defendants were even served with the complaint in this case, and it is entirely speculative whether he will apply for and be denied

---

(6th Cir. 2009) (quoting *Gentek Bldg. Prods. v. Sherwin-Williams Claims*, 491 F.3d 320, 330 (6th Cir. 2007)).   A facial attack questions the sufficiency of the allegations in the pleading.  *Id.*  In a factual attack, "the district court must weigh the evidence and the plaintiff has the burden of proving that the court has jurisdiction over the subject matter." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005).  When reviewing a facial attack, a court takes the allegations in the complaint as true.  *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).  In a factual attack, however, there is no presumption that the factual allegations of the complaint are true.  *Id.*  Although Defendants submit an affidavit from Michael Wartella in support of their Rule 12(b)(1) motion, the Court treats the motion as a facial attack, as the Wartella affidavit does not refute Matwyuk's allegations in the amended complaint that the Department of State initially denied his request for the INF1DL plate on the basis that it might carry a connotation offensive to good taste and decency.

another vanity plate, especially one with a social or political message such as INF1DL.  Matwyuk responds

that he has adequately demonstrated a justiciable injury because his claim for declaratory relief is not based

solely upon the past denial of his vanity plate request under the "offensive to good taste and decency"

provision, but is also grounded in his intention to apply for a vanity plate for his motorcycle.  (Dkt. # 14 at

Page ID 153, ¶¶ 57, 58.)  Matwyuk argues that because the Department of State continues to apply the

"offensive to good taste and decency" restriction, there is a significant possibility that his speech will be

subjected to that restriction.

In the First Amendment context, a plaintiff may establish standing by showing that he intends to

engage in conduct that will result in application of the statute or that the statute chills his constitutionally-

protected conduct.  *Glenn v. Holder*, 690 F.3d 417, 421 (6th Cir. 2012).  Here, Matwyuk has alleged that

he intends to apply for a vanity plate for his motorcycle.  In light of the procedural posture of the case—a

motion to dismiss—these allegations suffice to meet Matwyuk's burden of alleging jurisdiction.  *See Lujan*,

504 U.S. at 561, 112 S. Ct. at 2136 ("At the pleading stage, general factual allegations of injury resulting

from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations

embrace those specific facts that are necessary to support the claim.") (internal quotation marks omitted)

(alteration in original).  Moreover, Matwyuk has shown a "significant possibility" that the Department of

State will apply the "offensive to good taste and decency" restriction to his license application because it

applied the restriction to his original vanity plate application.  *See Lopez v. Candaele*, 630 F.3d 775, 786

(9th Cir. 2010) (noting that past enforcement of a restriction can be "strong evidence" of future

enforcement).  Defendants insist that the prior denial of Matwyuk's requested INF1DL license plate resulted

from an administrative error rather than an application of the "offensive to good taste and decency"

language because the Department of State had already issued essentially the same plate and should have

recognized that Matwyuk's requested plate was not invalid under the "offensive to good taste and decency"

restriction.  Even if an administrative error occurred, the fact remains that the Department of State and

6

Fildey applied the "good taste" restriction three times to Matwyuk's request, reasoning each time that the configuration might be offensive to good taste. Thus, regardless of whether an administrative error occurred, Matwyuk suffered an injury to a constitutionally-recognized interest as a result of the application of the "good taste" restriction, and there is no indication that the Department of State would not apply that restriction to the application that he intends to file.

Furthermore, it is well established that a plaintiff may bring a First Amendment facial challenge to a licensing scheme that vests government officials with overly broad discretion to permit or deny expressive activity without first applying, and being denied, a license. *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 753, 755–56, 108 S. Ct. 2138, 2143 (1988). As the Sixth Circuit has explained,

> when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subjected to the law may challenge it facially without the necessity of applying for, and being denied, a license. Such a licensing requirement constitutes a prior restraint and may result in censorship. Thus, the prior restraint of a licensing provision coupled with unbridled discretion itself amounts to an actual injury.

*Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 351 (6th Cir. 2007). "This exception from general standing rules is based on an appreciation that the very existence of some broadly written laws has the potential to chill the expressive activity of others not before the court." *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 129, 112 S. Ct. 2395, 2401 (1992). Here, Plaintiffs allege that the "offense to good taste and decency" restriction is unconstitutionally overbroad and vague and thus fails to prescribe objective standards to discourage government officials from arbitrary application.[3] Accordingly, Matwyuk has

---

[3] Defendants argue that the rule set forth in *City of Lakewood* does not apply in this case because the state did not deny Matwyuk a state-issued licence for his vehicle, and Matwyuk is merely speculating that the Department of State will determine that his proposed vanity plate for which he intends to apply is offensive to good taste and decency. Nonetheless, the fact remains that Matwyuk was initially denied a vanity plate under the state's separate license plate program open to all citizens. Moreover, while Defendants are correct that it is merely speculative at this point that Matwyuk's application for a proposed vanity plate will be denied under the "offensive to good taste and decency" standard, there is no question that his proposed plate would still be subjected to review under that standard, which Matwyuk claims is unconstitutionally vague and overbroad. *Cf. Women's Emergency Network v. Bush*, 323 F.3d 937, 947 (11th Cir. 2003) (observing that "the *Lakewood* line of cases might be relevant" if the appellants were challenging the Florida statute authorizing specialty license plates).

standing to raise a facial challenge seeking a declaratory judgment that the "offensive to good taste and decency" restriction is overbroad and vague.

### b.     Mootness

Defendants next contend that the issuance of the INF1DL plate to Matwyuk renders his facial claims moot. Defendants argue that the Department of State's correction of the "administrative oversight" as soon as it was brought to its attention precludes any further relief and demonstrates that the Department of State does not selectively deny personalized plates based on viewpoint.

"A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189, 120 S. Ct. 693, 708 (2000) (internal quotation marks omitted). In the context of a facial challenge, repeal of the challenged law or ordinance is an event that can moot the claim. *Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1256–57 (10th Cir. 2004). Similarly, "statutory changes that discontinue a challenged practice are 'usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed.'" *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 116 (4th Cir. 2000) (quoting *Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505, 1510 (9th Cir. 1994)).

The injury that forms the basis of Matwyuk's facial challenge in this case arises from the statutory language at issue, not from the denial of the INF1DL license plate. Defendants do not contend that the challenged statute has been repealed or amended, such that the constitutional infirmity has been remedied. *See Rock for Life-UMBC v. Hrabowski*, 411 F. App'x 541, 550 (4th Cir. 2010) ("When a facially overbroad regulation is subsequently narrowed within constitutional boundaries, the inherent threat of content-based discrimination becomes null."). Similarly, Defendants make no representation that the challenged statute will not be enforced against Matwyuk or others who apply for personalized license plates in the future. Thus, Defendants have failed to show that Matwyuk's facial challenge is moot.

### c.        Exercise of Declaratory Judgment Jurisdiction

Defendants also contend that consideration of the applicable factors set forth in *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.*, 746 F.2d 323 (6th Cir. 1984), compels the conclusion that declaratory relief is inappropriate in this case. In *Grand Trunk*, the Sixth Circuit set forth the following factors that a district court should consider in deciding whether to entertain a declaratory judgment action:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Id.* Applying these factors, the Court finds it appropriate to entertain Matwyuk's claim for declaratory relief. With regard to the first and second factors, a declaratory judgment would both settle the controversy and clarify whether the disputed statutory language is facially overbroad of vague. The third factor does not apply, as there is no indication that Plaintiffs are using this case to obtain a procedural advantage over Defendants. The fourth factor also does not apply, because there is no indication that Plaintiffs' assertions of their constitutional challenges to a state law in federal court improperly encroaches on the jurisdiction of Michigan courts. Finally, Defendants do not suggest an alternative remedy which is better or more effective than the instant lawsuit.

### 2.        Defendant Fildey is not Entitled to Qualified Immunity

Defendants contend that Defendant Fildey is entitled to qualified immunity on Matwyuk's damage claim. "Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cnty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)). Once the defendant raises the defense, the plaintiff bears the burden of showing

9

that the defendant is not entitled to qualified immunity. *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). The plaintiff must allege "facts sufficient to indicate that the [government official's] act in question violated clearly established law at the time act was committed." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1043 (6th Cir. 1992).

The qualified immunity analysis involves two steps: "(1) whether considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and, if so, (2) whether that right was clearly established." *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001)). However, the Supreme Court has held that district courts should not view the two-step *Saucier* procedure "as an inflexible requirement." *Pearson v. Callahan*, 555 U.S. 223, 227, 129 S. Ct. 808, 813 (2009). Rather, lower courts have discretion to decide which of the two steps to address first. *Id.* at 236, 129 S. Ct. at 818. "[W]hile the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory." *Id.*

Defendants contend that the Court should dispense with the first prong of the analysis and decide qualified immunity solely on whether the law was clearly establish at the time of the alleged violation. Matwyuk responds that the Court should decide the constitutional issue because, absent a ruling from this Court, Defendants will continue to apply the allegedly invalid "offensive to good taste and decency" language to vanity plate applications.

The Supreme Court has instructed that lower courts should resolve qualified immunity issues solely on immunity grounds when:

> (1) the first, constitutional violation question "is so factbound that the decision provides little guidance for future cases"; (2) "it appears that the question will soon be decided by a higher court"; (3) deciding the constitutional question requires "an uncertain interpretation of state law"; (4) "qualified immunity is asserted at the pleading stage" and "the precise factual basis for the . . . claim . . . may be hard to identify"; (5) tackling the first element "may create a risk of bad decisionmaking" due to inadequate briefing; (6) discussing both elements risks "bad decisionmaking"  because the court is firmly convinced the law is not clearly established and is thus inclined to give little thought to the existence of the constitutional right; or (7) the doctrine of "constitutional avoidance" suggests the wisdom of passing on

10

the first constitutional question because "it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right."

*Kerns v. Bader*, 663 F.3d 1173, 1180–81 (10th Cir. 2011) (quoting *Pearson*, 555 U.S. at 236–42, 129 at 818–821). The Court finds none of these circumstances present in this case. Matwyuk alleges facial challenges to the "offensive to good taste and decency" restriction on overbreadth and vagueness grounds based on well-worn legal principals, and as-applied claims based on a simple, discrete set of facts.[4] Moreover, because Defendants also move for dismissal of DeVarti's claims for injunctive and declaratory relief—to which qualified immunity does not apply—the Court must address the constitutional issues in any event.

### a. Constitutional Violation

As noted, Matwyuk asserts both facial and as-applied challenges. An as-applied challenge alleges that a law is unconstitutional when applied to the plaintiff's particular circumstances. *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 570 (6th Cir. 2012). In contrast, a facial challenge alleges that the law is unconstitutional under all circumstances.[5] *See Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187,

---

[4]Defendants argue that analysis of the constitutional issue is inappropriate in this case, in part, because Matwyuk's facial overbreadth challenge is tethered to the facts concerning his INF1DL vanity plate. This argument mischaracterizes the nature of the overbreadth challenge presented. Matwyuk asserts what the Seventh Circuit has termed a "substantive overbreadth" challenge, as opposed to a "technical overbreadth" challenge. *See Bell v. Keating*, 697 F.3d 445, 453 n.2 (7th Cir. 2012). "Substantive overbreadth" "plagues regulations that target a category of subject matter or a particular viewpoint." *Id.* (citing *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382, 112 S. Ct. 2538, 2542 (1992) ("The First Amendment generally prevents government from proscribing speech, or even expressive conduct, because of disapproval of the ideas expressed." (internal citations omitted))); *see also United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 360 n.9 (6th Cir. 1998) ("Although neither party utilized the term 'overbroad,' the substance of their arguments raised below essentially involved a facial challenge to SORTA's advertising policy on the ground that the policy's guidelines are unconstitutionally overbroad by permitting SORTA officials to reject a proposed advertisement on the basis of the viewpoint expressed."). In contrast, "technical overbreadth" arises where a law or regulation's "unconstitutional applications against otherwise protected expression outnumber [its] legitimate ones." *Bell*, 697 F.3d at 453; *R.A.V.*, 505 U.S. at 38 n.3, 112 S. Ct. at 2542 n.3 (describing "technical overbreadth" as "a claim that the ordinance violated the rights of too many third parties"). The facial challenge in *Speet v. Schuette*, 726 F.3d 867 (6th Cir. 2013), which alleged that a Michigan statute that criminalized begging was overbroad because it reached a substantial amount speech protected by the First Amendment, presents an example of "technical overbreadth."

[5]Judge Moore's opinion in *Nader v. Blackwell*, 545 F.3d 459 (6th Cir. 6th Cir. 2008), which, together with Judge Clay's opinion constitutes the majority opinion in that case, establishes that a court may properly consider the constitutionality of a statute in the context of a claim for damages against an individual defendant who enforced the statute. *See id.* at 478–79.

193 (6th Cir. 1997).  "Facial invalidation  is strong medicine that is not to be casually employed."  *Ohio Citizen Action*, 671 F.3d at 570 (internal quotation marks omitted); *see also Speet v. Schuette*, 726 F.3d 867, 872 (6th Cir. 2013) ("Sustaining a facial attack to the constitutionality of a state law . . . is momentous and consequential.").   However, the Supreme Court has made clear that a facial challenge is appropriate when a law vests "unbridled discretion" in a decisionmaker.  *City of Lakewood*, 486 U.S. at 755–56, 108 S. Ct. at 2143; *see also Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 129–30, 112 S. Ct. 2395, 2401 (1992) ("[T]he Court has permitted a party to challenge an ordinance under the overbreadth doctrine in cases where every application creates an impermissible risk of suppression of ideas, such as an ordinance that delegates overly broad discretion to the decisionmaker, and in cases where the ordinance sweeps too broadly, penalizing a substantial amount of speech that is constitutionally protected.") (internal citations omitted).  There are "two major First Amendment risks associated with unbridled licensing schemes: self-censorship by speakers in order to avoid being denied a license to speak; and the difficulty of effectively detecting, reviewing, and correcting content-based censorship 'as applied' without standards by which to measure the licensor's action."  *City of Lakewood*, 486 U.S. at 759, 108 S. Ct. at 2145.  "Therefore, a facial challenge lies whenever a licensing law gives a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers."  *Id.*

i.  ***Government versus Private Speech***

Defendants do not directly argue, but suggest, that personalized license plates issued pursuant to M.C.L.A. § 257.803b are government speech, rather than private speech.  "The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech."  *Pleasant Grove City v. Summum*, 555 U.S. 460, 467, 129 S. Ct. 1125, 1131 (2009) (citing *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 553, 125 S. Ct. 2055, 2058 (2005)).  The government "has the right to 'speak for itself,'" *id.* (quoting *Bd. of Regents of Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217, 229, 120 S. Ct. 1346, 1354

12

(2000)), "'to say what it wishes,'" *id.* at 467–68, 129 S. Ct. at 1131 (quoting *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 833, 115 S. Ct. 2510, 2519 (1995)), and "to select the views that it wants to express." *Id.* at 468, 129 S. Ct. at 1131. Moreover, the government may rely on private parties to convey the government's message without surrendering the speech as its own. *Id.*

In *Summum*, the Court held that privately-donated monuments that a government accepts for permanent placement in a park are a form of government speech not subject to the strictures of the First Amendment. *Id.* at 464, 129 S. Ct. at 1129. The Court observed that throughout the history of the United States, governments have accepted privately-funded and -created monuments for display on a selective basis and that public parks are "closely identified in the public mind with the government unit that owns the land," and "commonly play an important role in defining the identity that a city projects to its own residents and to the outside world." *Id.* at 471–72, 129 S. Ct. at 1133-34. The Court concluded that the monuments in that case constituted government speech because the city exercised authority over every aspect of the approval process, selected the monuments it wanted to display, took ownership of them, and placed them in the city park for all to view. *Id.* at 473, 129 S. Ct. at 1134. Thus, the city "'effectively controlled' the messages sent by the monuments." *Id.*

In *American Civil Liberties Union of Tennessee v. Bredesen*, 441 F.3d 370 (6th Cir. 2006), the Sixth Circuit held that license plates issued under Tennessee's specialty plate license program bearing the message "Choose Life" were government speech. The Tennessee statute at issue in *Bredesen* authorized the issuance of premium-priced specialty license plates bearing specialized logotypes to raise money for designated "'departments, agencies, charities, programs and other activities impacting Tennessee.'" *Id.* at 372 (quoting Tenn. Code Ann. § 55-4-201(j) (now § 55-4-201(i)). One-half of the profits from the sale of specialty plates were paid to the designated charity or program and the other half was paid to the Tennessee arts commission and the state's highway fund. *Id.* The state issued a new specialty plate under the statute only after receipt of one thousand advanced orders. *Id.* The state authorized the creation of specialty plates, including the

13

"Choose Life" plate, through specific statutory enactments. *Id.* Applying the Supreme Court's rationale in *Johanns v. Livestock Marketing Association*, 544 U.S. 550, 125 S. Ct. 2055 (2005), which concluded that a federal government program designed to promote the beef industry constituted government speech, the Sixth Circuit concluded that the "Choose Life" specialty plate was government speech because the "Choose Life" plate was Tennessee's message. "The Tennessee legislature chose the 'Choose Life' plate's overarching message and approved every word to be disseminated. Tennessee set the overall message and the specific message when it spelled out in the statute that these plates would bear the words 'Choose Life.'" *Id.* at 376 (citing Tenn. Code. Ann. § 55-4-306 (authorizing the "Choose Life" plate)).

Michigan's personalized license plates at issue in this case cannot reasonably be considered government speech. In contrast to the specialty plates at issue in *Bredesen*, the individuals who apply for Michigan personalized license plates—not the government—determine the message. *See* M.C.L.A. § 257.803b. The fact that license plates remain the property of the state, *see* M.C.L.A. § 257.259, is not controlling because the Sixth Circuit has held that private speech is not transformed into government speech simply because it occurs on government property. *Miller v. City of Cincinnati*, 622 F.3d 524, 537 (6th Cir. 2010). Michigan's only role in the process, other than collecting the license fee and issuing the physical plate, is to determine whether the proposed combination "might carry a connotation offensive to good taste and decency." *Id.* Moreover, each personalized plate, e.g., SOCRMOM, HAVNFUN, MSUPWRD, MFAN1, and MOMSVAN, is unique to the applicant because duplicates are prohibited. Thus, unlike Tennessee's "Choose Life" specialty plates in *Bredesen*, which were available to all Tennessee drivers, under Michigan's statute, only one vanity plate bearing a unique combination may be issued.[6] Accordingly, the First Amendment applies to messages on personalized license plates. *See Lewis v. Wilson*, 253 F.3d 1077, 1079–80 (8th Cir. 2001).

---

[6] The fact that the state issues a requested letter combination—thereby signaling that the state concludes that the combination is not "offensive to good taste and decency"—does not deprive the speech of its private nature.

14

ii.      *Facial Challenge*

Matwyuk has sufficiently alleged a claim that the "offensive to good taste and decency" restriction is unconstitutionally overbroad. *See Rock for Life-UMBC v. Hrabowski*, 411 F. App'x 541, 550 (4th Cir. 2010) (noting that an allegation that a law is facially unconstitutional because it grants the decisionmaker "unbridled discretion" "is a facial challenge premised on overbreadth").   In addressing First Amendment claims, courts typically begin the analysis by identifying the type of forum at issue—traditional public forum, designated public forum, limited public forum, or nonpublic forum—because the forum type generally determines the applicable constitutional standard. *See Miller*, 622 F.3d at 533–36.   Courts have differed on the type of forum vanity or specialty license plates present. *See Choose Life Ill., Inc. v. White*, 547 F.3d 853, 865 (7th Cir. 2008) (concluding that specialty plates are a nonpublic forum because their primary purpose is to identify the vehicle, not to facilitate the free exchange of ideas); *Perry v. McDonald*, 280 F.3d 159, 168–69 (2d Cir. 2001) (concluding that space and shape restrictions severely limiting license plates as a means of expression compelled the conclusion that vanity plates are nonpublic forum); *Lewis*, 253 F.3d at 1079 ("We express some initial skepticism about characterizing a license plate as a nonpublic forum, because it occurs to us that a personalized plate is not so very different from a bumper sticker that expresses a social or political message.").   The type of forum is not crucial for purposes of the instant motion, however, because restrictions that are not viewpoint-neutral are "presumptively unconstitutional in any forum." *Sons of Confederate Veterans, Inc.*, 288 F.3d 610, 623  (4th Cir. 1992); *see also Children First Found., Inc. v. Legreide*, 373 F. App'x 156, 159 (3d Cir. 2010) (noting that the Supreme Court's "forum analysis does not apply to restrictions on expression that are based on a speaker's viewpoint").

The "offensive to good taste and decency" language impermissibly permits the Department of State to deny a license plate application based on viewpoint because the statute lacks objective criteria, and thus confers unbounded discretion on the decisionmaker. *See Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150–51, 89 S. Ct. 935, 938 (1969) (noting "the many decisions of this Court over the last 30 years,

holding that a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional"). The success of this type of facial challenge "rests not on whether the administrator has exercised his discretion in a content-based manner, but whether there is anything in the ordinance to prevent him from doing so." *Forsyth Cnty.*, 505 U.S. at 133 n.10, 112 S. Ct. at 2403 n.10. In *Lewis v. Wilson*, 253 F.3d 1077 (8th Cir. 2001), the Eighth Circuit sustained a facial challenge to Missouri's vanity license plate statute, which allowed the state to reject license plate requests that were "contrary to public policy," on the ground that the statute granted the state "nearly unfettered discretion in choosing what license plates should be rejected and in deciding what alleged 'public policy' supports its decision." *Id.* at 1080. The court noted that the government's shifting rationale as to why the word "Aryan" was contrary to public policy—first because it suggested racial superiority and later because it might incite road rage—was itself proof that the phrase was unconstitutionally broad. *Id.* Similarly, in *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Regional Transit Authority*, 163 F.3d 341 (6th Cir. 1998), the Sixth Circuit held that the defendant's advertising policy prohibiting "controversial" advertisements was unconstitutionally overbroad because its application presented a "very real and substantial" danger that the defendant would exclude a proposed advertisement solely because of its viewpoint. *Id.* 361–62. Other courts have held similar terms lacking specific limiting standards unconstitutional delegations of "unbridled discretion." *See McCauley v. Univ. of the V.I.*, 618 F.3d 232, 248–49 (1st Cir. 2010) ("Paragraph R's use of 'offensive' is, 'on its face, sufficiently broad and subjective that [it] could conceivably be applied to cover any speech . . . th[at] offends someone.'") (quoting *DeJohn v. Temple Univ.*, 537 F.3d 301, 317 (3d Cir. 2008)); *Aubrey v. City of Cincinnati*, 815 F. Supp. 1100, 1104 (S.D. Ohio 1993) (concluding that the Cincinnati Reds' banner policy allowing banners only if they were in "good taste" left "too much discretion in the decision maker without any standards for that decision maker to base his or her determination"). Furthermore, as in *Lewis*, the Department of State's inconsistent application of the "offensive to good taste and decency"

16

standard—thrice denying Matwyuk's proposed INF1DL plate as offensive to good taste and decency and

finally acknowledging that Matwyuk's requested plate should have been issued in the first instance because,

at some prior time, a decisionmaker had previously determined that INFIDL is not offensive to good taste

and decency—illustrates the potential for viewpoint discrimination inherent in the statute.

In considering a facial challenge, a court must also consider the government entity's "authoritative

constructions of the ordinance, including its own implementation and interpretation of it."  *Forsyth Cnty.*,

505 U.S. at 131, 112 S. Ct. at 2402.  Although the Department of State has adopted internal guidelines that

augment the statute by providing some definite standards, the guidelines do not alleviate the potential for

viewpoint discrimination.  In fact, the guidelines, which preclude combinations that are irreverent toward

"sacred things," including God, and that negatively portray a given racial, religious, ethnic, or

socioeconomic group, including persons of a particular gender or sexual orientation, explicitly sanction

viewpoint discrimination.  *See Byrne v. Rutledge*, 623 F.3d 46, 48 (2d Cir. 2010) (concluding that

Vermont's ban on all vanity plate combinations that refer to a religion or deity constituted unconstitutional

viewpoint discrimination).  Positive sentiments regarding these topics are allowed, while the opposite are

prohibited.  Moreover, the guidelines compound the infirmity of the statute by authorizing configurations

based on the amorphous ground of being "unacceptable with respect to society's collective values."

Matwyuk also sufficiently alleges that the statute is facially invalid because it is unconstitutionally

vague.  "A statute is unconstitutionally vague if it denies fair notice of the standard of conduct for which

the citizen is to be held accountable, or if it is an unrestricted delegation of power which leaves the

definition of its terms to law enforcement officers."  *American-Arab Anti Discrimination Comm. v. City of

Dearborn*, 418 F.3d 600, 609 (6th Cir. 2005) (quoting *Leonardson v. City of East Lansing*, 896 F.2d 190,

196 (6th Cir. 1990)); *see also United Food & Commercial Workers*, 163 F.3d at 30 ("We will not presume

that the public official responsible for  administering a legislative policy will act in good faith and respect

a speaker's First Amendment rights; rather, the vagueness doctrine requires that the limits the [government]

17

claims are implicit in its law be made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice.") (internal quotation marks omitted).  Recently, the New Hampshire Supreme Court held that language in New Hampshire's vanity license plate regulation prohibiting combinations that "a reasonable person would find offensive to good taste," was unconstitutionally vague because the regulation lacked clear standards to prevent arbitrary and discriminatory application by government officials.  *See Montenegro v. New Hampshire Div. of Motor Vehicles*, — A.3d —, 2014 WL 1813278, at *4–5 (N.H. 2014).  The court observed that "[b]ecause the 'offensive to good taste' standard is not susceptible of objective definition, the restriction grants DMV officials the power to deny a proposed vanity registration plate because it offends particular officials' subjective idea of what is 'good taste.'" *Id.* at *5.  For the same reasons, the "offensive to good taste and decency" language grants the decisionmaker undue discretion, thereby allowing for arbitrary application.

### iii.  As Applied Challenge

Matwyuk has also sufficiently alleged that the statute is unconstitutionally overbroad and vague as applied to him.  That is, regardless of whether the statute at issue is facially invalid,  Matwyuk alleges facts showing that Defendant Fildey denied  Matwyuk's requested license plate on the basis of viewpoint, which is never permissible, even in a nonpublic forum. *Lamb's Chapel v. Ctr. Moriches Sch. Dist.*, 508 U.S. 384, 394, 113 S. Ct. 2141, 2147 (1993) (quoting *Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*, 473 U.S. 788, 806, 105 S. Ct. 3439, 3451 (1985)).  Moreover, evidence that a statute has been interpreted or enforced in an inconsistent manner (as may have been the case here) is relevant to a vagueness claim.  *See Cunney v. Board of Trs. of the Vill. of Grand View*, 660 F.3d 612, 623 (2d Cir. 2011) (observing that the defendant's actions and admissions "demonstrate that no explicit standards exist regarding the method with which to measure from the easterly side of River Road").

18

###### b.    Clearly Established

To be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007) (internal quotation marks omitted).  In other words, the law must be sufficiently clear that a reasonable officer would be on notice that his conduct is clearly unlawful. *Saucier*, 533 U.S. at 202, 121 S. Ct. at 2156.  "[A]n action's unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning a court employs." *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (citing *Hope v. Pelzer*, 536 U.S. 730, 742-43, 122 S. Ct. 2508, 2516-17 (2002)).  In determining whether a right was clearly established, courts in the Sixth Circuit look first to decisions of the Supreme Court, then to decisions of the Sixth Circuit, and then to decisions of other courts of appeals. *Hearring v. Sliwowski*, 712 F.3d 275, 280 (6th Cir. 2013).  "[T]here need not be a case with the same fact pattern, or even 'fundamentally similar' or 'materially similar' facts; rather, the question is whether the defendants had 'fair warning' that their actions were unconstitutional." *Cummings v. City of Akron*, 418 F.3d 676, 687 (6th Cir. 2005) (quoting *Hope*, 536 U.S. at 741, 122 S. Ct. at 2516); *see also Hearring*, 712 F.3d at 280 ("Some violations of constitutional rights are so obvious that a materially similar case is not required for the right to be clearly established.") (internal quotation marks omitted).  Thus, "a lack of caselaw squarely governing a given issue does not mean that a right is not clearly established." *Flying Dog Brewery, LLLP v. Mich. Liquor Control Comm'n*, 870 F. Supp. 2d 477, 485 (W.D. Mich. 2012).

Matwyuk contends that Defendant Fildey is not entitled to qualified immunity because at the time he enforced the "offensive to good taste and decency" law against Matwyuk in late 2012 and early 2013, the law was clearly established that a facially unconstitutional statute cannot be enforced under any circumstances, *see H.D.V.-Greektown, LLC v. City of Detroit*, 568 F.3d 609, 619 (6th Cir. 2009) ("[T]his court has repeatedly held that facially unconstitutional laws will not be enforced.") (citing *Amelkin v.*

19

*McClure*, 205 F.3d 293, 296 (6th Cir. 2000), and *37712, Inc. v. Ohio Dep't of Liquor Control*, 113 F.3d 614, 618 n.7 (6th Cir. 1997)), that a law that allows officials to censor speech on the basis of viewpoint is overbroad, and thus facially constitutional, *see Forsyth Cnty.*, 505 U.S. at 130–133, 112 S. Ct. at 2401–2403, and that laws restricting speech based on "good taste and decency" are unconstitutionally vague, *see Coates v. City of Cincinnati*, 402 U.S. 611, 614–16, 91 S. Ct. 1686, 1688–89 (1971).  Defendants do not argue otherwise, but contend that the law governing Fildey's actions was not clearly established because the Sixth Circuit held in *Bredesen* that Tennessee specialty license plates were government speech. While Defendants acknowledge substantive differences between specialty license plate programs, such as that at issue in *Bredesen*, and personalized license plate programs, they assert that it is not entirely clear whether the Sixth Circuit would apply the same analysis to vanity plates.[7]  Defendants further argue that the law from other jurisdictions regarding personalized license plates is inconsistent as to whether personalized license plates are a forum for speech.

As already discussed, in *Bredesen*, the Sixth Circuit concluded that the "Choose Life" specialty plates under Tennessee's specialty license plate statute were government speech because Tennessee chose and controlled the message through a statute specifically authorizing the issuance of "Choose Life" plates. *Bredesen*, 441 F.3d at 376.  As the Court has explained, the circumstances surrounding issuance of vanity

---

[7]Defendants do not argue that Defendant Fildey is entitled to qualified immunity—at least with regard to Matwyuk's facial challenge—because the statute has never been declared unconstitutional.  In *Michigan v. DeFillippo*, 443 U.S. 31, 99 S. Ct. 2627 (1979), the Supreme Court observed:

> Police are charged to enforce laws until and unless they are declared unconstitutional.  The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality–with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws.  Society would be ill-served if its police offices took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement.

443 U.S. at 38, 99 S. Ct. 2632.  Because Defendants fail to raise this argument, the Court declines to do so *sua sponte*. Had Defendants raised it, Matwyuk surely would have responded that the statute is of the "so grossly and flagrantly constitutional"-ilk referred to in *De Filippo*.  *See Leonard v. Robinson*, 477 F.3d 347, 359–61 (6th Cir. 2007).

20

plates under Michigan's statute are distinguishable. *See Byrne v. Rutledge*, 623 F.3d 46, 48, 58 n.9 (2d Cir. 2010) (describing *Bredesen* as addressing "the distinguishable context of license plates bearing a 'government-crafted message'" rather than vanity plates "contain[ing] a short message selected by the registrant"). The applicant—not the state—selects the message. While the state does review the proposed configuration to ensure compliance with the "good taste and decency standard," it does not determine the subject, exercise editorial control, or take any action indicating an intent to adopt the message as its own. Moreover, in *Miller v. City of Cincinnati*, 622 F.3d 524 (6th Cir. 2010), the Sixth Circuit held that speech by private individuals is not transformed into government speech simply because it occurs on government property. *Id.* at 537 ("[N]o one can reasonably interpret a private group's rally or press conference as reflecting the government's views simply because it occurs on public property.") Any such connection is even more attenuated in this case because the private speech on government property (the license plate) is semi-permanently affixed to private property (the vehicle). Finally, unlike the monuments displayed in the park in *Pleasant Grove City*, the messages on vanity plates affixed to private vehicles do not "commonly play an important role in defining the identity that a [state] projects to its own residents and to the outside world." 555 U.S. at 472, 129 S. Ct. at 1134. Rather, vanity plates are viewed as defining the identity of the driver of the vehicle bearing them. Therefore, no reasonable governmental official in Defendant Fildey's position would have believed that INF1DL constituted government speech.

## B.    DeVarti's Claims

Defendants contend that the Court should dismiss DeVarti's claims for declaratory and injunctive relief because DeVarti has not met the grounds for permanent injunctive relief, DeVarti's facial challenge on overbreadth and vagueness grounds fails, and his claim that the "offensive to good taste and decency" restriction is unconstitutional as applied to DeVarti fails as a matter of law. For the reasons set forth above, the Court concludes that DeVarti states a claim that the "offensive to good taste and decency" restriction

21

is facially unconstitutional.   Accordingly, DeVarti has alleged a sufficient basis for declaratory and injunctive relief.

  With regard to DeVarti's as applied claim, the Court concludes that his allegations are sufficient to warrant factual development.  "[I]t is . . . black-letter law that, when the government permits speech on government property that is a nonpublic forum, it can exclude speakers on the basis of their subject matter, so long as the distinctions drawn are viewpoint neutral and reasonable in light of the purpose served by the forum."  *Davenport v. Washington Educ. Ass'n*, 551 U.S. 177, 189, 127 S. Ct. 2372, 2381 (2007) (citing *Cornelius*, 473 U.S. at 799-800, 105 S. Ct. at 3447–48).  Defendants contend that the rejection of DeVarti's application for a WAR SUX plate was reasonable because SUX is a phonetic variation of the word "sucks," which can have a sexual connotation, the word "sucks" is inappropriate for children, and the state has an interest in protecting viewers of license plates—a captive audience—from viewing the word "sucks."  None of these reasons is particularly compelling for dismissal.   First, although "sucks" does have a sexual connotation when used in a specific context, it has other accepted meanings having nothing to do with sex. *See*  http://dictionary.reference.com/browse/sucks?s=t (last visited May 9, 2014) (describing slang usage as "to be repellant or disgusting: *Poverty sucks*").   Development of a factual record will assist the Court in determining whether usage of the word "sucks" or "SUX" in "WAR SUX" is generally understood to convey a sexual meaning.   *See Broussard by Lord v. Sch. Bd. of City of Norfolk*, 801 F. Supp. 1526, 1533–34 (E.D. Va. 1992) (recounting evidence received during a bench trial on the plaintiff's First Amendment claim, including expert testimony as to whether the phrase "Drugs Suck!" on the student's shirt could be considered offensive or sexual).   Second, whether the word "sucks" is inappropriate for children when used in the phrase "WAR SUX" is also an issue requiring factual development.   As DeVarti notes, some children's literature uses the popular slang "suck," and given its popular usage, it is at least unclear whether any viewer of the phrase "WAR SUX" would interpret the word in a sexual manner.   *See* Seth

Stevenson, *Suck It Up: A defense of the much-maligned word*, available at http://www.slate.com/articles/life/the_good_word/2006/08/suck_it_up.html. Finally, the Court has serious doubts that the "captive audience" doctrine applies in this case. The Supreme Court has 'applied the captive audience doctrine only sparingly to protect unwilling listeners from protected speech." *Snyder v. Phelps*, 131 S. Ct. 1207, 1220 (2011) (holding that a funeral attendee who observed the tops of protest signs when driving to the funeral was not captive to the message). Courts generally apply the doctrine only in those situations in which the unwilling listener or viewer cannot avert the speech without undue hardship. The Supreme Court has applied the doctrine "when the speaker intrudes on the privacy of the home, or the degree of captivity makes it impractical for the unwilling viewer or auditor to avoid exposure." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 209, 95 S. Ct. 2268, 2272–73 (1975) (internal citation omitted); *see also Gregory v. City of Chicago*, 394 U.S. 111, 125–26, 89 S. Ct. 946, 954 (1969) (Black, J., concurring) ("[T]he homes of men, sometimes the last citadel of the tired, the weary and the sick, can be protected by government from noisy, marching, tramping, threatening picketers and demonstrators bent on filling the minds of men, women, and children with fears of the unknown."). For example, in *Frisby v. Schultz*, 487 U.S. 474, 108 S. Ct. 2495 (1988), the Court upheld a city ordinance banning picketing in front of a residence. The Court observed that "[t]he resident is figuratively, and perhaps literally, trapped within the home, and because of the unique and subtle impact of such picketing is left with no ready means of avoiding unwanted speech." *Id.* at 487, 108 S. Ct. at 2504. In contrast, in *Cohen v. California*, 403 U.S. 15, 91 S. Ct. 1780 (1971), the Court held that those present in the courthouse who viewed a message including an expletive displayed on the back of the defendant's jacket "could effectively avoid further bombardment of their sensibilities simply by averting their eyes." *Id.* at 21, 91 S. Ct. at 1786; *see also Erznoznik*, 422 U.S. at 212, 95 S. Ct. at 2274 (concluding that the captive audience doctrine would not support an ordinance banning the showing of films containing nudity on drive-in movie screens because "the offended viewer

23

readily can avert his eyes").  The license plates at issue in this case are more like the message on the back of the jacket in *Cohen*, or the passing viewer of the drive-in move in *Erznoznik*—the driver or passenger could easily avert the eyes from the relatively small area occupied by the license plate by looking away or by maneuvering the vehicle to avoid the offensive message.  *Cf. Planned Parenthood Ass'n/Chi. Area v. Chi. Transit Auth.*, 592 F. Supp. 544, 555 (N.D. Ill. 1984) (concluding that even though riders on public transit "are more cramped and restricted than [persons on] public streets," the defendant failed to show that it was impossible for the unwilling passenger to avert his eyes from the printed message), *aff'd* 767 F.2d 1225 (7th Cir. 1985).  Thus, vanity plates are not "so obtrusive as to make it impossible for an unwilling individual to avoid exposure to it."  *Eznoznik*, 422 U.S. 212, 95 S. Ct. at 2274 (quotation marks omitted). Thus, DeVarti may proceed with his as applied claim.

### III.  CONCLUSION

For the foregoing reasons, the Court will deny Defendants' Motion to Dismiss.

An order consistent with this Opinion will be entered.


Dated:  May 23, 2014                              /s/ Gordon J. Quist
                                        GORDON J. QUIST
                                    UNITED STATES DISTRICT JUDGE